# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:14-cv-58-FDW

| | | |
|---|---|---|
| BOBBY LEON LITTLE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| STATE OF NORTH CAROLINA, | ) | |
| | ) | |
| Respondent. | ) | |

**THIS MATTER** comes before the Court on Respondent's Motion for Summary Judgment, (Doc. No. 5), and on Petitioner's Motion to Amend/Correct Petition for Writ of Habeas Corpus, (Doc. No. 8).

### I. BACKGROUND

On August 23, 2010, Bobby Leon Little, a prisoner of the State of North Carolina, was found guilty by a jury in Anson County Superior Court of second-degree murder in case number 08 CRS 51033. (Doc. No. 6-21 at 67: Ex. 13). After determining Petitioner was a Prior Record Level IV offender, the trial court sentenced Petitioner in the presumptive range to 240 to 297 months imprisonment. (Id. at 68-72). Petitioner was represented by Attorney W. Terry Sherill at trial. Petitioner appealed and was represented by Attorney Geoffrey W. Hosford. (Id. at 80). On September 6, 2011, the North Carolina Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. State v. Little, 215 N.C. App. 392 (2011).

Petitioner did not immediately seek further appellate review. Over a year later, on

September 24, 2012, Petitioner filed in the North Carolina Court of Appeals and North Carolina Supreme Court a "Motion to Extend Time to File MAR & State Habeas Petition," which the North Carolina Court of Appeals dismissed by order entered September 26, 2012, and which the North Carolina Supreme Court denied by order entered December 12, 2012. (Doc. Nos. 6-24, 6-25: Exs. 16-17). Petitioner also filed with the North Carolina Supreme Court a petition for writ of certiorari ("PWC") on October 4, 2012, and a petition for discretionary review ("PDR") on October 9, 2012. See (Doc. Nos. 6-26; 6-27: Exs. 18-19). By order entered December 12, 2012, the North Carolina Supreme Court denied the PDR, and by order entered December 12, 2012, and certified December 18, 2012, the court denied the PWC. (Id.).

On January 15, 2013, Petitioner filed a pro se motion for appropriate relief ("MAR") with the Anson County Superior Court. (Doc. No. 6-28: Ex. 20). By order filed February 20, 2013, the MAR was denied. (Doc No. 6-29: Ex. 21). Petitioner did not file a PWC seeking appellate review of the denial of his MAR. Petitioner placed the petition in the prison system for mailing on January 20, 2014, and it was stamp-filed in this Court on February 4, 2014. (Doc. No. 1 at 1). On July 1, 2014, Respondent filed the pending motion for summary judgment. (Doc. No. 5). On July 2, 2014, this Court entered an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), granting Petitioner fourteen days to respond to the summary judgment motion. (Doc. No. 7). Petitioner filed a response on July 15, 2014. (Doc. No. 8). In the response, Petitioner also seeks to amend the petition to substitute North Carolina Department of Public Safety Secretary Frank Perry as Respondent. Petitioner sets forth the following, alleged grounds for relief in the petition: (1) that his statements to law enforcement on June 21, 2008, were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and (2) that the State's witnesses who

moved the victim's body before he died could have caused the victim's death. (Doc. No. 1 at 5; 7).

The North Carolina Court of Appeals summarized the facts as follows:

On 20 June 2008, defendant's brother-in-law Roger Rorie ("Rorie") and William Chandler Thompson ("Thompson") picked up defendant and drove to various locations in Wadesboro, North Carolina. The three men consumed alcohol and socialized during this time. Eventually, they returned to Rorie's automobile in order to drive home.

While they were traveling back to their respective homes, defendant told Thompson that he "didn't appreciate [Thompson] calling [defendant's] wife [a] name." Defendant and Thompson began arguing in a heated manner until Rorie intervened. Defendant later tried to reinitiate the argument, but Thompson ignored him.

When the men arrived in Thompson's driveway, their earlier argument escalated into a physical altercation in the back seat of Rorie's automobile. When the altercation ended, defendant exited the vehicle and began walking towards the road to his home. Suddenly, defendant shouted "hey" and then fired a shot at Thompson, striking him in the chest. Defendant then ran back towards his home, yelling "Come on, M–F, come on." Thompson died as a result of the gunshot wound.

Sergeant Jimmy Williams ("Sgt.Williams"), Deputy Mike Boger ("Deputy Boger"), and Deputy Josh Beam ("Deputy Beam") of the Anson County Sheriff's Office ("the Sheriff's Office") responded to the shooting. When Sgt. Williams arrived, a male eyewitness informed him that defendant had shot Thompson and returned to his home. Sgt. Williams and Deputy Boger then went to defendant's home.

Sgt. Williams knocked on defendant's door and asked for defendant. Defendant came outside and Sgt. Williams placed him in handcuffs and asked what happened. Defendant responded, "I was tired of him beating on me." Sgt. Williams advised defendant to not say anything else about the shooting. Sgt. Williams next asked defendant if he had any weapons on him. Defendant replied, "No, I threw it behind the building," and then led officers to the gun's location. Deputy Boger then sat with defendant while they waited for another officer to take defendant to the Sheriff's Office. While they were waiting, defendant continued to speak about the incident, despite warnings from Deputy Boger that he should not discuss the incident further.

> At the Sheriff's Office, defendant was interrogated by Special Agent Justin Godfrey ("Agent Godfrey") of the State Bureau of Investigation. Prior to speaking with defendant about the shooting, Agent Godfrey informed defendant of his Miranda rights. Defendant made several ambiguous statements to Agent Godfrey regarding his right to an attorney. Nonetheless, defendant executed a written waiver of his Miranda rights and allowed Agent Godfrey to interrogate him regarding the shooting. The entire exchange between defendant and Agent Godfrey was recorded.
>
> Defendant was subsequently indicted for first degree murder. On 11 March 2010, defendant filed a motion to suppress, inter alia, his statements to Agent Godfrey. After a hearing, the trial court entered an order denying defendant's motion.

State v. Little, 215 N.C. App. 392, at \*\*1-2 (2011) (some alterations in original).

## II. STANDARD OF REVIEW

### A. Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### B. Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the Petition for Writ of Habeas Corpus under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to

4

the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Young v. Catoe, 205 F.3d 750, 755 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F.3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108

(quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

In addition, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 131 S. Ct. 1120, 1127 (2011) (internal quotations and citations omitted). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Id. (citation omitted). A procedural default also occurs "when a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Hyman v. Keller, No. 10-6652, 2011 WL 3489092, at *9 (4th Cir. July 21, 2011) (quoting Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)); see also 28 U.S.C. § 2254(b)(1)(A).

### III. DISCUSSION

### A. STATUTE OF LIMITATIONS

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court must be filed within one year of the latest of:

>  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Furthermore, for convictions that became final before the AEDPA's effective date, the limitations period began to run on April 24, 1996, the effective date of the Act. See Harris v. Hutchinson, 209 F.3d 325, 328 (4th Cir. 2000). Finally, the one-year limitations period is tolled during pendency of a properly filed state post-conviction proceeding. See 28 U.S.C. § 2244(d)(2). However, the filing of any motions after the one-year limitations period has already run do not revive the already expired one-year limitations period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (concluding that the Section 2254 petition was "clearly time-barred," where the petitioner had moved for post-conviction relief in state court only after the time limitation had expired).

In support of the summary judgment motion, Respondent first contends that the petition is time-barred. The Court agrees. As noted, the North Carolina Court of Appeals issued its opinion affirming Petitioner's conviction on September 6, 2011. Petitioner then had thirty-five days--until October 10, 2011--to file a petition for discretionary review to the North Carolina Supreme Court. See N.C. R. App. P. 15(b) ("A petition for review following determination by the Court of Appeals shall be similarly filed and served within fifteen days after the mandate of the Court of Appeals has been issued to the trial tribunal."); N.C. R. App. P. 32(b) ("Unless a court orders otherwise, its clerk shall enter judgment and issue the mandate of the court twenty days after the written opinion of the court has been filed with the clerk."). Petitioner did not file a PDR during that thirty-five-day time frame, and therefore, Petitioner's conviction became final on October 10, 2011. See Gonzalez v. Thaler, 132 S. Ct. 641, 656 (2012) ("We hold that, for a

state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires."). Therefore, barring tolling, Petitioner's limitations period was slated to expire on October 10, 2012. Shortly before the October 10, 2012, deadline, Petitioner filed a "Motion to Extend Time to File MAR & State Habeas Petition" in both the North Carolina Supreme Court and North Carolina Court of Appeals on September 24, 2012. (Doc. Nos. 6-24; 6-25). The Court of Appeals dismissed the motion on September 26, 2012, and the Supreme Court denied the motion on December 12, 2012. (Id.). Neither of these motions was a properly filed application for state post-conviction review. First, the motions were not "properly filed" because any motion for an extension of time to file an MAR should have been filed in superior court. See N.C. GEN. STAT. § 15A-1415(d) (providing for an extension of time for filing an MAR). See generally N.C. GEN. STAT. § 15A-1413 (setting jurisdiction in the trial division). Moreover, even if the motions for extension of time had been filed in the proper court, neither motion was a properly filed application for state post-conviction review.[1] See Howell v. Crosby, 415 F.3d 1250, 1251 (11th Cir. 2005) ("It is undisputed that [Petitioner's] motion for an extension of time did not meet the criteria of section 2244(d)(2) as a 'properly filed application' for postconviction relief."). Thus, the motions for extension did not serve to toll the statute of limitations period.

The Court additionally finds that Petitioner's PWC and PDR, filed in the North Carolina Supreme Court on October 4, 2012, and October 9, 2012, respectively, also did not constitute properly filed applications for state post-conviction review. First, as the orders reference both

---

[1] Respondent states that if one of the appellate courts had granted the motion, it may have been considered sufficient to toll, but as neither court granted the extension, the motions did not qualify for tolling under Section 2244(d)(2).

8

file numbers from the Court of Appeals, it is unclear from the face of the Supreme Court's orders whether the PWC and PDR were from the Court of Appeals' denial of the extension of time or from the Court of Appeals' opinion on direct appeal. If the former, they are not properly filed applications for the same reasons set forth above. If the latter, the PWC and PDR were not applications for "post-conviction or other collateral review," 28 U.S.C. § 2244(d)(2), because they were applications for a delayed appeal to the Supreme Court from the Court of Appeals' ruling on direct review. In sum, Petitioner's PWC and PDR did not operate to toll the limitations period, which expired fully on October 10, 2012. Because Petitioner did not file the petition until June 20, 2014, the petition is time-barred.[2]

### B. MERITS OF PETITIONER'S CLAIMS

Even if the petition were timely, Petitioner's claims would still fail on the merits. Petitioner first contends that his statements to police should have been suppressed because, due to his alleged alcohol impairment, he did not voluntarily, knowingly, and understandingly waive his Miranda rights. The last decision on the merits for purposes of this Court's habeas review was that of the MAR Court. (Doc. No. 6-29: Ex. 21). The MAR Court denied Petitioner's claim as procedurally barred and, alternatively, on the merits. See (Doc. No. 6-29 at 2). As to the procedural default, Petitioner attempted to raise the Miranda issue on appeal, but the North

---

[2] Respondent contends, and the Court agrees, that even if Petitioner's limitations period remained tolled during pendency of any of these filings, the petition would still be time-barred because by the time Petitioner filed his MAR on January 15, 2013, the statute of limitations would have already run. Moreover, even assuming arguendo that Petitioner could have had the benefit of ninety days to file a PWC to the United States Supreme Court from the North Carolina Supreme Court's denial of his PWC and dismissal of his PDR, the petition was still untimely. Finally, because the Court finds that Petitioner's claims fail on the merits regardless of the timeliness of the petition, the Court does not need to address whether Petitioner is entitled to equitable tolling.

Carolina Court of Appeals held that "[s]ince defendant neither objected to the admission of this evidence at trial nor argues on appeal that the admission of this evidence constituted plain error, defendant has waived appellate review of this issue." State v. Little, 215 N.C. App. 392, at **1-2 (2011). Based on the MAR Court's finding, this Court denies Petitioner's claim as procedurally defaulted. In the alternative, the MAR court held that this claim was without merit. While summarily rejecting most of Petitioner's claims, the MAR Court noted that it "did carefully review the Petitioner's claim that his statement to law enforcement officers was not knowingly, willingly, understandingly, and voluntarily made." (Doc. No. 6-29 at 2). The MAR Court then noted that although the issue had not been preserved for appellate review after the trial court ruled at a suppression hearing, "a full and fair hearing was made on the merits at the trial court," and there was not a "possibility of a contrary result should the matter have been preserved for review by the appellate court" considering "the evidence presented at trial" and the "facts and conclusions of law determined by the [trial court]." (Id.). The MAR Court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. As Respondent notes, after hearing evidence and assessing the credibility of the witnesses, the trial court concluded in an eight-page order containing numerous findings of fact that Petitioner "was not impaired by alcohol so as to make his waiver of his Miranda rights involuntary." (Doc. No. 6-21 at 33: Ex. 13). The trial court's findings of fact were fully supported by the evidence at the multiple-day suppression hearing. See (Doc. Nos. 6-2; 6-3; 6-4; 6-5). This Court must presume as correct the trial court's findings of fact, and Petitioner has failed to rebut this presumption. See 28 U.S.C. § 2254(e)(1) (state court findings of fact must be rebutted by clear and convincing evidence). In sum, the MAR Court's alternative

adjudication of Petitioner's first claim on the merits was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it an unreasonable determination of the facts in light of the evidence presented in the state courts. 28 U.S.C. § 2254(d).

Petitioner next contends that the conduct of the witnesses who attempted to render aid to the victim could have been an intervening cause in the victim's death. Petitioner did not raise this claim on direct appeal. The MAR Court denied this claim as procedurally defaulted and, alternatively, on the merits. The MAR Court's alternative adjudication of Petitioner's claim on the merits was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it an unreasonable determination of the facts in light of the evidence presented in the state courts. Petitioner is essentially arguing that there was constitutionally insufficient evidence to show that the victim died as a result of the shotgun wound, as opposed to as a result of some conduct of the witnesses who came to the victim's aid after Petitioner shot him. The clearly established Supreme Court law governing this Court's review of such a claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); In Re Winship, 397 U.S. 358, 362 (1970). Petitioner has offered no explanation for how the actions of the witnesses who attempted to render aid to the victim could be considered "the sole cause" of the victim's death when it was Petitioner who shot the victim. In sum, the MAR Court's alternative adjudication of Petitioner's second claim on the merits was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

11

## IV. CONCLUSION

For the reasons stated herein, Respondent is entitled to summary judgment because the petition is time-barred and, in any event, Petitioner's claims fail on the merits.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment, (Doc. No. 5), is **GRANTED**, the petition is denied, and this action is dismissed.

2. Petitioner's Motion to Amend, (Doc. No. 8), is **GRANTED**, and Frank Perry is substituted as Respondent.

3. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: August 1, 2014

Frank D. Whitney
Chief United States District Judge